## Eliza Kempner et al. v. Hans Thompson.

### Decided February 12, 1907.

**1.—Conversion of Property.**

In a suit for the value of cotton alleged to have been converted by defendant, evidence considered and held to justify a peremptory instruction to find for the plaintiff.

**2.—Factors—Their Rights—Estoppel.**

There is no special. statute in this State protecting factors and commission merchants in advances made upon property consigned to them by persons not the owners. It is only where the owner of property invests another with possession and other indicia of ownership and thus enables him to impose upon a factor and obtain advances upon the faith of such apparent ownership, that he, the owner, would be denied relief against the factor who sold such property and applied the proceeds to the payment of the debt of said apparent owner. And this, by reason only of the law of estoppel.

**3.—Same.**

Where a merchant obtained from a factor a loan of money upon the false representation that he had in his possession a certain number of bales of cotton which he would ship to the factor, and thereafter and after the loan was obtained the merchant obtained from a third party possession of a certain number of bales of cotton to be shipped and sold for the account of said third party, and the merchant shipped said cotton to his factor who, without knowledge of the facts, sold the cotton and applied the proceeds to the merchant's account, the third party, the owner of the cotton, was not estopped by any act of his, and was entitled to recover the proceeds from the factor.

**4.—Factor—Expenses—Pleading.**

Where, under the facts stated in the foregoing paragraph, in a suit by the owner of the cotton against the factor for the value of the same the factor neither pleads nor proves in the trial court the amount of freight paid by him on the cotton nor the amount of his commissions for the sale of the same, the claim for these expenses comes too late on appeal.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*Kleberg, Davidson & Neethe,* for appellants.—It appearing from the uncontradicted evidence that on the 19th day of December, 1901, defendants sold said cotton and applied the proceeds in part payment of Burke & Buelow's indebtedness, and that prior thereto, namely, on the 25th day of November, 1901, the plaintiff placed said cotton in the possession of said Burke & Buelow with authority to ship same to Galveston, defendants, under the evidence, were not guilty of the conversion of said cotton or the proceeds thereof, and the court below erred in returning a verdict against defendants; also erred in its charge to the jury that the defendants were guilty of conversion, and also erred in not giving the charge asked by defendants, to return a verdict for defendants. South Bend Iron Works Co. v. Wagner, 74 S. W. Rep. (Texas), 601; Logan County Bank v. Townsend, 139 U. S., 67; Smith v. Jones, 8 Ark., 109; Burford v. Fannen, 1 Am. Dec., 615; Dealy v. Lance, 2 Speer's, 487; Dahl v. Fuller, 50 Wis., 501; Strauss v. Schwab, 104 Ala., 669.

It appearing from the uncontradicted evidence that Kempner did not

advance the sum of twenty-five hundred dollars, or any other particular sum, on the said 73 bales of cotton (of which the 22 bales in question was a part), but that said twenty-five hundred dollars was advanced to said Burke & Buelow upon the understanding that said 73 bales were to be shipped as other cotton had been, and was being shipped, and that the proceeds thereof, when sold, was to go to the general account of the said Burke & Buelow with said Kempner as cotton factor; and that after said 73 bales of cotton were shipped to the said H. Kempner, and after he received bills of lading therefor in the name of the said Burke & Buelow, and after he received said 73 bales of cotton into his possession, the said Kempner advanced other and additional sums of money on all cotton then in his hands (including the said 73 bales), and long before he (Kempner) had any information that appellee made any claim to any of said cotton; the court below erred in charging the jury as follows: "The defendants had no right to apply the proceeds of cotton belonging to the plaintiff to the payment of any amount due them by Burke & Buelow otherwise than as an advance made on or against the particular cotton." Mills v. Johnson, 23 Texas, 325; Copes v. Perkins, 6 Texas, 150; Winne v. Hammond, 37 Ill., 99; 19 Cyc. of Law & Proc., 158, title "General Balance of Factor," and authorities cited; 12 Am. & Eng. Ency. of Law (2d ed.), 679, title "Factors or Commission Merchants," paragraph 2, sec. b, and authorities there cited; Chapman v. Kent, 3 Duer (N. Y.), 234.

The evidence showing that after the plaintiff had actually placed the cotton in question in the hands of Burke & Buelow, the defendants made advances thereon, and it further appearing that defendants made such advances in good faith, and as a cotton factor, and without knowledge as to the alleged ownership of plaintiff, it was the duty of the court to give some charge as to the rights of defendants growing out of their advances made subsequent to the 25th of November, 1901, when said cotton was shipped by Burke & Buelow. A charge of similar nature was held to be a correct charge, in the case of Morris v. Sellers, 46 Texas, 391, to which the attention of this court is specially called.

*W. W. Dodd, Mott & Armstrong* and *Dougherty & Dougherty,* for appellee.—It appearing from the uncontradicted evidence that the title to the cotton was in plaintiff, and defendants not having shown that plaintiff was estopped to assert it, plaintiff was entitled to a peremptory instruction. Low v. Moore, 72 S. W. Rep., 421; Phelps v. Barkley, 40 S. W. Rep., 384; Ryberg v. Snell, 2 Wad. (U. S.), 403; Moore v. Hill, 38 Fed. Rep., 337; Sidwell v. Warehouse Co., 65 S. W. Rep., 437; Booker v. Jones, 55 Ala., 275; 12 Am. & Eng. Enc. of Law, 688.

REESE, ASSOCIATE JUSTICE.—In this case Hans Thompson sues Eliza Kempner and I. H. Kempner for damages for conversion of 22 bales of cotton.

Upon trial with a jury the trial court instructed a verdict for plaintiff for the amount which Kempner, a factor and commission merchant, had received for the cotton on sale thereof, less a certain agreed credit. From the judgment the defendants appeal.

The undisputed evidence discloses the following facts: On November

8 and 9, 1901, Burke & Buelow, merchants doing business at Beeville, Texas, were indebted to Eliza Kempner, doing business in the name of H. Kempner, as a cotton factor and commission merchant in Galveston, in the sum of $14,085, which was the amount which had been advanced to said Burke & Buelow by Kempner upon 391 bales of cotton consigned by them to Kempner for sale on commission. On November 8 Buelow applied to Kempner for a further advance of $2,500 on the cotton in his hands. On account of the state of the account Kempner declined to make the advance, but upon Buelow's representations that he had 73 bales of cotton at Normanna which he would ship to Kempner, Kempner agreed to advance and did advance to Burke & Buelow $2,500 upon the 73 bales of cotton which Buelow promised to ship.

On November 25 one Selegid and appellee Hans Thompson delivered to the agent of the railway company at Normanna 55 bales of cotton which were by the agent marked S T and numbered from 1 to 55. The numbers from 1 to 33 were put upon Selegid's 33 bales, and the numbers from 33 to 55 were put upon the bales belonging to appellee. The agent was told by appellee that Burke & Buelow would give him shipping instructions for his cotton. The cotton belonged to appellee and was to be shipped by Burke & Buelow for his account. Appellee had the cotton on hand on the 23d of November and on or about that day upon Buelow's solicitation agreed to allow Burke & Buelow to ship it to Galveston for him to be held until the price suited appellee and then to be sold for appellee's account when ordered by him. On the 25th of November, the day the cotton was delivered at Normanna to the railroad company, Burke & Buelow gave appellee the following receipt: "Beeville, Texas, 11|25|1901. Received of Hans Thompson twenty-two B|c to be sold when he demands at market price 22 B|c. Burke & Buelow."

The 55 bales were shipped to Kempner by Burke & Buelow as their own cotton and as a part of the 73 bales promised upon which the $2,500 had been advanced on November 9. The other 18 bales to make out the 73 bales were also afterwards shipped. After this cotton came into Kempner's hands, he having at the time about 500 bales of Burke & Buelow's cotton, made further advances to them amounting in the aggregate to $3,500. These additional advances were made partly in consideration of an advance in the price of cotton and partly upon the faith of other cotton which Burke & Buelow agreed to ship and which they did ship.

On December 19 the 22 bales of cotton were sold by Kempner, along with other cotton, upon the order of Burke & Buelow. The price received by Kempner for the 22 bales was $958.48. All of the cotton in Kempner's hands was sold during the months of December, 1901, and January and February, 1902, and the proceeds, after deducting proper charges, credited upon the Burke & Buelow account, leaving a balance of $904.69 due Kempner. Kempner had no knowledge or notice that the cotton belonged to appellee, or that it did not belong to Burke & Buelow, until after it was sold.

It had been agreed that, without prejudice to his claim as set up in this suit, appellee might prove his claim against the bankrupt estate of Burke for the value of the cotton, whatever amount so received by

him to be credited upon his claim against Kempner, and upon this claim appellee had received $219.92.

Upon this state of the evidence the trial court charged the jury as follows:

"The defendants had no right to apply the proceeds of cotton belonging to the plaintiff to the payment of any amount due them by Burke & Buelow otherwise than as advances made on or against the particular cotton, and could not use the same for the purpose of discharging advances already made to the said Burke & Buelow upon their agreement to furnish cotton to cover the same, plaintiff's ownership of the cotton that Burke & Buelow had no possession of or control over this particular cotton, previous to the 25th day of November, 1901, and that the advances made to Burke & Buelow by defendants of $2,500, claimed to have been made in part as an advance on the 22 bales of cotton in question, was made on the 8th and 9th days of November, 1901, being all, in the judgment of the court, facts shown by the evidence beyond reasonable controversy, you are therefore instructed to return a verdict in this case for the plaintiff for the sum of $958.48, less $219.92, with six percent interest thereon from the 1st day of January, 1902."

This charge is assigned as error, and appellants insist that it was an invasion of the province of the jury and in effect deprived them of their constitutional right to a trial by jury.

There is no controversy about the facts in evidence. We do not understand that appellants claim that there is; at least, no conflict in the evidence is pointed out in the brief. The ownership of the cotton by appellee is shown not only by his own testimony, but by the receipt of Burke & Buelow, and he is corroborated as to the delivery of the cotton, the date of the delivery and the marking of the same by other witnesses and not a shadow of suspicion is cast upon his testimony by any single circumstance in the case. In fact the truth of this evidence is not disputed by appellants in their brief. The facts with regard to the advances made on the cotton, the time when and the circumstances under which they were made, the sale of the cotton and the price obtained therefor, were all shown by the evidence of I. H. Kempner and Seinsheimer, who had charge of the business of H. Kempner, and by evidence furnished by them from the books of H. Kempner. There is not a material fact in the controversy about which there was any issue. The undisputed evidence showed that at the time the $2,500 was advanced to Burke & Buelow the 22 bales of cotton belonged to appellee and was in his possession, and that it was not until some time after, that there was any proposition that he should turn the same over to Burke & Buelow to be shipped for him. The undisputed evidence, that of Seinsheimer, also showed that the advances made after this cotton came into Kempner's hands were not made upon this cotton, but partly upon the ·advance in the prices of all of the cotton of Burke & Buelow then held by Kempner, amounting to over 500 bales, and upon other cotton which they promised to ship and did ship. The account of sales furnished by Kempner of the sale of 55 bales, of which the 22 bales was a part, showed that these 22 bales were sold for amount stated in the charge of the court. The calculation was made by a witness for appellee and verified and the amount is not disputed by appellants, and no attempt

made to show or to indicate that the amount does not represent the price received by Kempner for the cotton.

There was no issue to be passed upon by the jury. It remained only for the court to draw the proper legal deduction from the facts thus established. (Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 86; Supreme Council of A. L. of H. v. Anderson, 61 Texas, 301; Grinnan v. Dean, 62 Texas, 220; Low v. Moore, 72 S. W. Rep., 421.) There was no question of the credibility of witnesses to be passed upon by the jury, as in Heierman v. Robinson (63 S. W. Rep., 657) and McDonald v. Nalle (91 S. W. Rep., 632).

Whatever rights appellants may have are based upon the ordinary doctrine of estoppel. There is no special statute in this State, as there is in some States, protecting them in advances made upon property consigned to them by persons not the owners of such property. If appellee by his own act invested Burke & Buelow with the indicia of ownership of his cotton, so as to enable them to impose upon appellants, and induce them to believe that they were the owners with authority to pledge the same to secure advances, appellants would be protected insofar, and only insofar, as they acted to their detriment upon the faith of such apparent ownership in Burke & Buelow. This rule is recognized in the opinion of the court in the case of Campbell & Rickarby v. Penn (7 La. Ann., 371) cited by appellants, and it was held that only that portion of the cotton, upon the promise to consign which the advances were made, which had been delivered to the fraudulent consignor at the time the advances were made, was bound for such advances. Expressions in the separate opinion of Justice Slidell, quoted by appellants in their brief, seem to support their contention, but insofar as they do, they are inconsistent with the conclusions of the court. It may be doubted if the trial court did not go farther than the law warrants in the conclusion that appellee's cotton was liable for advances made on the particular cotton. (12 Am. & Eng. Ency. of Law, 688; Booker v. Jones, 55 Ala., 275.) This, however, it is not necessary to decide.

So far as the $2,500 advanced to Burke & Buelow on November 9 is concerned it was not, and in the nature of things could not have been induced by any act of appellee. If Burke & Buelow had represented to Kempner that they were the owners of this identical 22 bales of cotton, and promised to ship the same to Kempner, appellee would have been in no way responsible for the deception. He can not be made liable for any deception practiced upon Kempner by Burke & Buelow unless he had by his own act contributed to such deception or enabled Burke & Buelow to impose upon Kempner. It is not pretended by Kempner that he had done so. The cotton was at that time and until the 25th of November in his own yard, and there had never been even a proposition that it be turned over to Burke & Buelow to ship for him. Kempner can not be allowed to protect himself from the consequences of his trust in them by saddling the loss upon another absolutely innocent of any act in the remotest degree tending to enable Burke & Buelow to deceive him.

As to the advances made after appellee's cotton was received by Kempner the evidence is equally positive and undisputed, in fact it comes from appellants' own witnesses, that these advances were not

made upon the faith of this insignificant 22 bales of cotton, but upon the general advance in the price of the 500 bales then held by appellants and other cotton to be shipped. If it were possible to show to what extent these further advances were induced by the apparent ownership of Burke & Buelow of these 22 bales belonging to appellee, no attempt was made to do so.

The measure of appellee's damages could not be less than the amount which appellants had received for the cotton, as to which there was no dispute. It is contended that there should have been deducted from this amount the freight paid and commissions charged for selling the cotton. No such claim is set up in appellants' pleadings. Nor did they introduce any evidence in support of such claim. It is true that the account of sales of the 55 bales of cotton, in which was included appellee's 22 bales, contains a statement of freight paid and commissions charged on the 55 bales, but this document was introduced for another purpose and no attempt was made by appellants to show how much freight had been paid or commissions charged upon this 22 bales. No charge was requested upon this point, and the objection is not made in the motion for a new trial. The claim that these expenses should have been allowed comes too late when presented for the first time in this court.

There was no error in giving the charge to find for the plaintiff in the amount stated in the court's charge.

This disposes of all of the errors assigned. The judgment is affirmed.

*Affirmed.*